United States District Court
District of Connecticut
FILED AT   BRIDGEPORT
March 7, 2011
Roberta D. Tabora, Clerk
By: B. Shallu
Deputy Clerk

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Criminal No. 3:11cr41 (SRU) |
| | : | |
| v. | : | VIOLATIONS: |
| | : | |
| FRANCISCO ILLARRAMENDI | : | 18 U.S.C. § 1343 [Wire Fraud] |
| | : | 15 U.S.C. §§ 78j(b), 78ff |
| | : | 17 C.F.R. § 240.10b-5 [Securities Fraud] |
| | : | 15 U.S.C. §§ 80b-6, 80b-17 [Investment Adviser Fraud] |
| | : | 18 U.S.C. § 371 [Conspiracy] |
| | : | 18 U.S.C. § 981(a) |
| | : | 28 U.S.C. § 2461(c) [Forfeiture] |

INFORMATION

The United States Attorney charges:

COUNTS ONE AND TWO
(Wire Fraud)

The Defendant

1. At all times relevant to this Information, FRANCISCO ILLARRAMENDI, the defendant herein, was a resident of New Canaan, Connecticut, and earned millions of dollars in income by acting as an investment adviser to hedge funds. In the course of advising hedge funds, he agreed to and did invest the money supplied principally by foreign institutional and individual investors in various securities.

Relevant Entities and Funds

2. At times relevant to this Information, ILLARAMENDI was:

(a) a partner in a United States based investment adviser registered with the U.S. Securities and Exchange Commission ("SEC") (the "Registered Adviser"); and

(b) the majority owner and control person of a group of related entities organized under the name Michael Kenwood Group, LLC ("MK Group") located in Stamford, Connecticut.

3. At times relevant to this Information, ILLARRAMENDI and MK Group, through Michael Kenwood Capital Management, LLC ("MK Capital"), advised and operated hedge funds, including the Short Term Liquidity Fund, I Ltd. ("STLF"), MK Venezuela, Ltd. ("MK VZ") and the MK Special Opportunities Fund, Ltd. ("MKSOF"). In addition, in his role at the Registered Adviser, ILLARRAMENDI advised and operated several hedge funds. The various hedge funds advised by ILLARRAMENDI will be referred to herein collectively as the "FUNDS."

4. At all times relevant to this Information, MK Group and MK Capital and related entities were not registered with the SEC as investment companies, investment advisers, broker dealers, or in any other capacity.

5. At all times relevant to this Information, ILLARAMENDI solicited foreign investors to invest in the FUNDS, which accepted investments from these investors and some domestic investors. He also solicited loans from creditors to generate liquidity by having certain investment advisory vehicles associated with the Registered Adviser and MK Group issue notes to those creditors.

6. In or about 2005 and 2006, one of the investments ILLARRAMENDI made on behalf of certain of the hedge funds managed by the Registered Adviser suffered losses of millions of dollars caused by external market forces. Rather than disclose to the investors the truth about these losses, ILLARRAMENDI intentionally chose to conceal this information from the investors by engaging in a scheme and artifice to defraud and mislead investors and creditors

to prevent the truth about the actual value of the FUNDS from being discovered. As described below, ILLARRAMENDI solicited additional investments on behalf of the FUNDS and obtained loans from creditors, which he used in part to pay redemption requests to fund investors and to satisfy obligations owed to creditors. As a result of the scheme described below, the FUNDS currently have outstanding liabilities that greatly exceed the true value of the FUNDS' assets and expose the investors to the risk of suffering losses of hundreds of millions of dollars.

### The Scheme to Defraud Investors and the SEC

7. From in or about 2006 to on or about February 8, 2011, in the District of Connecticut and elsewhere, ILLARRAMENDI knowingly and willfully and with intent to defraud devised and intended to devise a scheme and artifice to defraud investors, creditors and the SEC and to obtain money and property from investors and creditors by means of materially false and fraudulent pretenses, representations and promises, which scheme and artifice is in substance as set forth in ¶¶ 8 through 16 of this Information, and did transmit, and cause to be transmitted, by means of wire communications in interstate and foreign commerce, writings, signs, signals, pictures and sounds for the purpose of executing such scheme and artifice.

### Purpose of the Scheme

8. The purpose of the scheme and artifice to defraud was for ILLARRAMENDI to conceal the gap between the assets and liabilities (the "Hole") of the FUNDS and other related entities by seeking to avoid redemption of the investments made by investors and soliciting new money from investors and creditors that enabled him to: (a) provide promised returns to investors whose investments had reached maturity; (b) use the new money to seek to generate sufficient profits to fill the Hole; and (c) forestall and prevent the discovery of the Hole by his investors, creditors and the SEC.

## Manner and Means of the Scheme and Artifice

The manner and means by which ILLARRAMENDI sought to accomplish the scheme and artifice included, among others, the following:

9. It was part of the scheme and artifice to defraud that ILLARRAMENDI did make and cause others to make certain materially false and misleading representations and omissions to investors, creditors and the SEC about the true performance of the FUNDS, the assets under management by the FUNDS and related entities, and the transactions being conducted by the FUNDS and related entities.

10. It was a further part of the scheme and artifice to defraud that ILLARRAMENDI, in an effort to gain additional time to fill the Hole and forestall discovery of the imbalance between the assets and liabilities of the FUNDS and related entities:

    (a) used some of the money provided by new investors to pay out the returns he promised to other investors;

    (b) created certain fraudulent documents to mislead and deceive certain investors, creditors and the SEC about the existence and extent of the assets of the FUNDS and related entities;

    (c) made false representations to certain investors in an effort to obtain new investments from them and to prevent or delay them from seeking to liquidate their investments; and

    (d) commingled the investments in each individual hedge fund with investments in the other hedge funds and related entities without regard to their structure, stated purpose or investment limitations and thus treated all investments in the FUNDS and related entities as a single source to provide returns to investors and to close out one of the hedge funds.

11. It was further part of the scheme and artifice to defraud that ILLARRAMENDI generated phony letters and bogus debt instruments designed to deceive certain investors into believing that their assets were properly invested, when he knew they were not. For example, on one occasion in or about 2008, he created a fraudulent letter that purported to be a representation by an investment bank that assets of the FUNDS and related entities were segregated from one another at the investment bank. ILLARRAMENDI created the letter by using the letterhead of the investment bank. The document was false. ILLARRAMENDI sent this fraudulent letter purporting to be from the investment bank to numerous foreign investors from Connecticut by wire communication. On or about December 5, 2008, ILLARRAMENDI sent an email to a creditor attaching a bogus debt instrument, which purported to be a Credit Linked Note issued by the same investment bank with a face value of $30 million. The document was fabricated by ILLARRAMENDI in an effort to mislead the creditor.

12. In a further effort to forestall discovery of the imbalance between the assets and liabilities of the FUNDS and related entities, ILLARRAMENDI engaged in transactions with others that made little economic sense. One of ILLARRAMENDI's motivations for conducting the transactions was to gain time to fill the Hole by generating immediate liquidity. For example, in one of these transactions, ILLARRAMENDI and others agreed to purchase from an investor an illiquid asset estimated to have little or no value. In order to execute the purchase of this asset, ILLARRAMENDI and others obtained from the same investor a separate liquid investment that exceeded the purchase price of the illiquid asset by tens of millions of dollars. In connection with the transaction, ILLARRAMENDI agreed to and did pay kickbacks to persons involved in the transaction. As a result of the transaction, ILLARRAMENDI and others were able to use the remaining tens of millions of dollars in liquidity for the FUNDS, which enabled

ILLARRAMENDI to continue the scheme to defraud and forestall the discovery of the Hole. Moreover, when ILLARRAMENDI and others eventually were able to sell the purchased asset for far less than they had paid for it, the proceeds of the sale were not returned to the STLF, which owned the purchased asset. Rather, ILLARRAMENDI and others agreed to divide the money among themselves as fees.

13. Beginning in 2010, the SEC made inquiries of ILLARRAMENDI, the Registered Adviser and MK Group regarding, among other things, the investment activities of the FUNDS. In a further effort to defraud and deceive his investors and to forestall the discovery of the Hole, ILLARRAMENDI provided, and caused others to provide, materially false documentation to the SEC, and made, and caused others to make, materially false representations to the SEC.

14. It was a further part of the scheme that during 2010, ILLARRAMENDI used approximately $53 million of assets belonging to STLF and MK VZ by transferring the money to other entities he controlled that were affiliated with MK Group. Thereafter, in an effort to generate a sufficient return to fill the Hole, ILLARRAMENDI used the approximately $53 million to invest in private equity companies. The investments were made in the name of entities affiliated with MK Group and not in the name of STLF or MK VZ.

15. Later in 2010, ILLARRAMENDI made a further attempt to conceal the Hole in the FUNDS by creating fictitious assets purportedly worth hundreds of millions of dollars. Specifically, he made an agreement with an accountant and others to create a fraudulent and fictitious letter (the "Fictitious Asset Verification Letter"), which falsely represented that STLF had at least approximately $275 million in credits as a result of outstanding loans. ILLARRAMENDI arranged for the creation of the Fictitious Asset Verification Letter to further

mislead and deceive investors and the SEC into believing that there was adequate capital and credit to protect the investors of STLF.

16. It was a further part of the scheme that ILLARRAMENDI caused the Fictitious Asset Verification Letter to be provided to the SEC. ILLARRAMENDI used the Fictitious Asset Verification Letter, which contained materially false loan representations, to: (a) deceive and defraud the SEC; (b) prevent the SEC from discovering the scheme and artifice to defraud in which ILLARRAMENDI had engaged; and (c) further conceal the Hole that existed within the FUNDS. In an effort to make the Fictitious Asset Verification Letter appear to be genuine, ILLARRAMENDI created a letter on STLF letterhead and backdated it so that it purported to be a request from him to the accountant for a validation of outstanding receivables of the STLF.

### The Execution of the Scheme and Artifice

17. On or about the dates set forth below, for the purpose of executing the above scheme and artifice and attempting to do so, in the District of Connecticut and elsewhere, FRANCISCO ILLARRAMENDI, the defendant herein, caused to be transmitted, by means of wire communications in interstate and foreign commerce, writings, signs, signals, pictures and sounds in furtherance of such scheme and artifice as described below, with each wire communication constituting a separate count of this Information as enumerated below:

| Count | Approximate Date of Wire | Description of Wire |
|---|---|---|
| 1 | December 5, 2008 | Email communication from ILLARRAMENDI attaching fraudulent Credit Linked Note purported to be issued by an investment bank, sent in interstate and foreign commerce from Connecticut. |
| 2 | January 6, 2011 | Email communication from the accountant to ILLARRAMENDI attaching the Fictitious Asset Verification Letter, which falsely represented the existence of at least approximately $275 million in STLF credits, sent in interstate and foreign commerce to Connecticut. |

All in violation of Title 18, United States Code, Section 1343.

## COUNT THREE
(Securities Fraud)

18. The allegations set forth in ¶¶ 1 through 6 and 8 through 16 of Counts One and Two of this Information are hereby realleged and incorporated as though set forth in full herein.

19. From in or about 2006 to in or about February 2011, in the District of Connecticut and elsewhere, FRANCISCO ILLARRAMENDI, the defendant herein, unlawfully, willfully, and knowingly, directly and indirectly, by the use of means and instrumentalities of interstate commerce, and the mails, in connection with the purchase and sale of securities, did use and employ manipulative and deceptive devices and contrivances as set forth in ¶¶ 8 through 16 of this Information, in violation of Title 17, Code of Federal Regulations, Section 240.10b-5, by: (a) employing devices, schemes, and artifices to defraud; (b) making untrue statements of material facts and omitting to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaging in transactions, acts, practices, and courses of business which operated and would operate as a fraud and deceit upon persons.

All in violation of Title 15, United States Code, Sections 78j(b) and 78ff, Title 17, Code of Federal Regulations, Section 240.10b-5.

## COUNT FOUR
(Investment Adviser Fraud)

20. The allegations set forth in ¶¶ 1 through 6 and 8 through 16 of Counts One and Two of this Information are hereby realleged and incorporated as though set forth in full herein.

21. From in or about 2006 to in or about February 2011, in the District of Connecticut and elsewhere, FRANCISCO ILLARRAMENDI, the defendant herein, acting as an investment adviser with respect to clients and potential clients of the FUNDS, unlawfully, willfully, and knowingly, by the use of the mails and means and instrumentalities of interstate commerce, directly and indirectly, did as set forth in ¶¶ 8 through 16 of this Information: (a) employ devices, schemes, and artifices to defraud clients and prospective clients; (b) engage in transactions, practices, and courses of business which operated as a fraud and deceit upon clients and prospective clients; and (c) engage in acts, practices, and courses of business that were fraudulent, deceptive, and manipulative.

All in violation of Title 15, United States Code, Sections 80b-6 and 80b-17.

## COUNT FIVE
(Conspiracy)

22. The allegations set forth in ¶¶ 1 through 6 and 8 through 16 of Counts One and Two of this Information are hereby realleged and incorporated as though set forth in full herein.

23. At all times relevant to this Information, the SEC was a federal government agency authorized by law to investigate, conduct official enforcement investigations, and file civil actions to protect investors in connection with the purchase and sale of securities.

24. Beginning in 2010, the SEC, as part of its official investigative and enforcement authority, sought information and documentation from ILLARRAMENDI and MK Group in an official SEC enforcement matter bearing *SEC File # B-2507*.

25. As part of its enforcement authority, the SEC served a subpoena for records upon, among others, MK Group. In December 2010 and January 2011, the SEC conducted an enforcement-directed review of MK Group and related entities as part of its official enforcement investigation.

26. On or about January 14, 2011, the SEC filed a civil action styled *SEC v. Illarramendi, et al., 3:11-CV-00078 (JBA)* ("SEC Civil Action"), seeking, among other things, to enjoin ILLARRAMENDI and entities related to MK Group from violating the federal securities laws and to submit an accounting of investor funds. Subsequent to the filing of the SEC civil action, the court appointed, and sought input from, business advisers and a receiver to ascertain the assets and liabilities of the hedge funds affiliated with MK Group, among other tasks.

### The Conspiracy to Obstruct Justice, an SEC Official Proceeding and the SEC

27. From in or about October 2010 to in or about February 2011, in the District of Connecticut and elsewhere, FRANCISCO ILLARRAMENDI, the defendant herein, did knowingly, willfully, and unlawfully combine, conspire, confederate, and agree with other persons, known and unknown, to commit offenses against the United States, namely:

    (a) to violate Title 18, United States Code, Section 1503, by corruptly, knowingly and willfully obstructing and impeding, and endeavoring to obstruct and impede, the due administration of justice in the SEC Civil Action;

    (b) to violate Title 18, United States Code, Section 1512, by corruptly, knowingly and willfully obstructing and influencing an official proceeding being conducted by the SEC in *SEC File # B-2507*; and

    (c) to defraud the SEC, an agency of the United States, in violation of Title 18, United States Code, Section 371, by obstructing, hampering, hindering, frustrating, defeating, impairing, and impeding by craft, trickery, deceit, and dishonest means its lawful and proper government functions of regulating securities transactions and investment advisers to detect and prevent the use of fraudulent and deceptive practices in connection with the purchase and sale of securities.

### The Purpose of the Conspiracy

28. The principal goals of the conspiracy included: (a) to impede the SEC's ability to discover the truth; and (b) to obstruct justice by preventing the truth from being discovered during the SEC Civil Action.

### Means Employed to Further the Conspiracy

29. It was a part of the conspiracy that ILLARRAMENDI agreed with other persons to create the Fictitious Asset Verification Letter purporting to demonstrate that the STLF had credits of at least approximately $275 million. ILLARRAMENDI agreed to provide other persons with more than $3 million to prepare and fraudulently substantiate the Fictitious Asset Verification Letter.

30. In furtherance of the conspiracy, in or about January 2011, ILLARRAMENDI caused the Fictitious Asset Verification Letter to be provided to the SEC and the court-appointed business advisers.

### OVERT ACTS

31. In furtherance of the conspiracy and to effect the objects thereof, ILLARRAMENDI and the co-conspirators committed, and caused to be committed, the following overt acts, among others, in the District of Connecticut and elsewhere:

    a. In or about January 2011, a conspirator emailed the Fictitious Asset Verification Letter to ILLARRAMENDI.

    b. In or about January 2011, ILLARRAMENDI caused the Fictitious Asset Verification Letter to be provided to the SEC.

    c. In or about January 2011, ILLARRAMENDI caused the Fictitious Asset Verification Letter to be provided to the court-appointed business advisers.

All in violation of Title 18, United States Code, Section 371.

## FORFEITURE ALLEGATION UNDER 28 U.S.C. § 2461(c) & 18 U.S.C. § 981(a)
(Wire Fraud)

Upon conviction of one or more of the wire fraud offenses alleged in Counts One and Two of this Information, FRANCISCO ILLARRAMENDI, the defendant herein, shall forfeit to the United States of America, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), all right, title, and interest in any and all property, real or personal, which constitutes or is derived from proceeds traceable to violations of 18 U.S.C. § 1343, and a sum of money equal to the total amount of proceeds obtained as a result of the offenses.

If any of the above-described forfeitable property, as a result of any act or omission of the defendant, cannot be located upon the exercise of due diligence, has been transferred, sold to, or deposited with a third party, has been placed beyond the jurisdiction of the court, has been substantially diminished in value, or has been commingled with other property which cannot be divided without difficulty, it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), as incorporated by 28 U.S.C. § 2461(c), to seek forfeiture of any other property of said defendant up to the value of the forfeitable property described above.

All in accordance with 18 U.S.C. § 981(a)(1), as incorporated by 28 U.S.C. § 2461(c), and Rule 32.2(a), Federal Rules of Criminal Procedure.

DAVID B. FEIN
UNITED STATES ATTORNEY

RICHARD J. SCHECHTER
SENIOR LITIGATION COUNSEL

PAUL A. MURPHY
ASSISTANT UNITED STATES ATTORNEY