```
               UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF CONNECTICUT

- - - - - - - - - - - - - - - - x
                                 :
UNITED STATES OF AMERICA         :  No.  3:11CR-41(SRU)
                                 :  915 Lafayette Boulevard
                                 :  Bridgeport, Connecticut
        vs.                      :
                                 :  March 7, 2011
FRANCISCO ILLARRAMENDI           :
                                 :
- - - - - - - - - - - - - - - - x
```

                    WAIVER AND PLEA


B E F O R E:

     THE HONORABLE STEFAN R. UNDERHILL, U. S. D. J.


A P P E A R A N C E S:


     FOR THE GOVERNMENT:

          OFFICE OF THE UNITED STATES ATTORNEY
               915 Lafayette Boulevard,  Room 309
               Bridgeport,  Connecticut 06604
          BY:  PAUL A. MURPHY, AUSA


     FOR THE DEFENDANT:

          GLEASON & KOATZ, LLP
               122 East 42nd Street
               New York, New York  10168
          BY:  JOHN P. GLEASON, ESQ.


               Susan E. Catucci, RMR
               Official Court Reporter
               915 Lafayette Boulevard
             Bridgeport, Connecticut  06604
                 Tel: (917)703-0761

```
1                    (12:00 O'CLOCK, NOON.)

2            THE COURT:  Good afternoon.  We're here in the

3   matter of United States v. Francisco Illarramendi.  Could

4   I have appearances, please?

5            MR. MURPHY:  Your Honor, Assistant United States

6   Attorney Paul Murphy on behalf of the United States.

7            With me at counsel table today are Special Agent

8   Jason Breen (ph) and Special Agent Sean Kahack (ph) of the

9   FBI.

10           THE COURT:  Thank you.

11           MR. GLEASON:  Good morning, Your Honor.  John

12   Gleason on behalf of Mr. Illarramendi.

13           THE COURT:  Very good.  And January Satrazemis

14   from the U. S. Probation Office is also with us in court

15   today.

16           I should note that this matter has been assigned

17   Docket Number 3:11CR-41 SRU.

18           All right.  And I understand that we're here

19   today for a waiver of indictment and the entry of guilty

20   pleas.  Is that correct?

21           THE DEFENDANT:  Yes.

22           MR. GLEASON:  That is correct.

23           THE COURT:  All right.  Mr. Illarramendi, the

24   first thing I'm going to do is tell you I'm in no hurry

25   today.  If you decide to waive indictment and plead
```

1    guilty, you're going to be giving up some important

2    constitutional rights and accepting certain other

3    significant consequences.  I want to make sure you

4    understand each of those rights before you waive them and

5    each of those consequences before you accept them.  So, if

6    at any time I or anybody else says anything that either

7    surprises you or causes you any concern, raises any

8    questions in your mind, just let me know and we'll try and

9    address that, okay?

10          THE DEFENDANT:   Correct.

11          THE COURT:  All right.  Let me start by advising

12    you of certain rights that you have both today and at all

13    times.  The first is the right to remain silent.  That

14    means you don't have to say anything at all in court

15    today.  You don't have to answer my questions.  You don't

16    have to make any kind of statement.  If you start

17    speaking, you can stop whenever you want to and then you

18    can speak with Mr. Gleason before you say anything in

19    court.  Do you understand that?

20          THE DEFENDANT:  Yes.

21          THE COURT:  All right.  Whatever you do say will

22    be taken down by my court reporter and could be used

23    against you in either this or some other case.  Do you

24    understand that?

25          THE DEFENDANT:  Yes.

1            THE COURT:  You have the right to counsel both

2    at trial and at every important proceeding in your case.

3    Do you understand that?

4            THE DEFENDANT:  Yes.

5            THE COURT:  If you cannot afford counsel,

6    counsel will be appointed for you in no cost to you.  Do

7    you understand that?

8            THE DEFENDANT:  Yes.

9            THE COURT:  And, finally, Mr. Gleason is here

10   for one reason only, and that is to protect your

11   interests.  And there's something called the

12   attorney-client privilege.  This means your private

13   conversations with him will remain private so you can feel

14   very comfortable speaking privately with Mr. Gleason and

15   telling him whatever he needs to know to best represent

16   you.  All right.

17           THE DEFENDANT:  Understood.

18           THE COURT:  Very good.  Now, before we can

19   proceed with a waiver and entry of a guilty plea, I have

20   to ask you certain questions and receive answers under

21   oath.  That means waiving your right to remain silent to

22   that extent.  Are you prepared to do that?

23           THE DEFENDANT:  Yes.

24           THE COURT:  All right.  I'd ask you to stand

25   please, and raise your right hand to be sworn to tell the

1    truth.

2         (Whereupon the Defendant was duly sworn by the

3    Clerk.)

4         THE COURT:  All right.  And now that you have

5    been sworn to tell the truth, should you make any false

6    statement under oath, you could be prosecuted either for

7    making a false statement or for perjury.  Do you

8    understand that?

9         THE DEFENDANT:  Understood.

10        THE COURT:  All right.  What is your full name,

11   please?

12        THE DEFENDANT:  Francisco Antonio Esteban Habean

13   Illarramendi Carlstat (ph).

14        THE COURT:  Have you ever used any other names?

15        THE DEFENDANT:  I'm called Pancho as a nickname.

16        THE COURT:  And what's your date of birth?

17        THE DEFENDANT:  February 27, 1969.

18        THE COURT:  And are you a U. S. citizen?

19        THE DEFENDANT:  Yes.

20        THE COURT:  How far did you go in school?

21        THE DEFENDANT:  I have a masters degree in

22   economics.

23        THE COURT:  All right.  Are you currently under

24   the care of either a physician or a psychiatrist?

25        THE DEFENDANT:  Physician.  I had to have

1    surgery about a year ago so I'm under his care on an

2    ongoing basis.  Not a psychiatrist, no.

3              THE COURT:  Are you currently taking any

4    prescription medications?

5              THE DEFENDANT:  No.

6              THE COURT:  In the last 48 hours, have you used

7    any narcotics or consumed any alcoholic beverages?

8              THE DEFENDANT:  No.

9              THE COURT:  Is your mind clear today?

10             THE DEFENDANT:  Yes.

11             THE COURT:  Do you understand what's going on?

12             THE DEFENDANT:  Yes, I do.

13             THE COURT:  Have you had a chance to speak with

14   Mr. Gleason about your case?

15             THE DEFENDANT:  Extensively.

16             THE COURT:  And have you spoken with him about

17   today's proceeding?

18             THE DEFENDANT:  Yes.

19             THE COURT:  Are you satisfied with his

20   representation of you so far?

21             THE DEFENDANT:  I am.

22             THE COURT:  Very good.

23             Mr. Gleason, in your conversations with

24   Mr. Illarramendi, have you come to any -- developed any

25   concerns about his competency to proceed with a change of

1    plea?

2                MR. GLEASON:  No, Your Honor.

3                THE COURT:  Very good.  All right.

4                Mr. Illarramendi, the first thing I'm going to

5    do is take up the question of whether this case will

6    proceed by return of indictment with a grand jury or

7    whether you wish to waive that right.  And let me try and

8    explain the right and the operation of the grand jury to

9    you so you can understand fully your right before you

10   decide whether to waive it.

11               Because the charges that the government wants to

12   bring against you are felony charges, you have a

13   constitutional right to have those charges brought by way

14   of what's called a return of an indictment by a grand

15   jury.  Quite simply, no felony charge can be brought

16   unless one of two things happens, either a grand jury

17   indicts someone on that felony charge or that person

18   waives their right to have a grand jury consider whether

19   to indict you.  Unless one of those two things happens, no

20   felony charge can brought in federal court.

21               A grand jury is a group of citizens, at least 16

22   and as many as 23 in number.  At least 12 of them have to

23   vote yes to two questions before you can be indicted.  The

24   first is, is there probable cause to believe that a felony

25   has been committed, and the second is, is there probable

1    cause to believe that you committed that felony.  Unless

2    12 people on the grand jury vote yes to both of those

3    questions, you cannot be indicted.  Do you understand?

4              THE DEFENDANT:  Correct, yes.

5              THE COURT:  All right.  Now, what the government

6    proposes to do is file charges against you, not by way of

7    return of a grand jury indictment but, rather, by what's

8    called an information.  And an information quite simply is

9    a charging document prepared by the prosecutor and never

10   reviewed by the grand jury.  Do you understand?

11             THE DEFENDANT:  Yes.

12             THE COURT:  And if you waive indictment, this

13   case will proceed on that information just as if you had

14   been indicted, even though the grand jury will never be

15   asked whether to indict you.  Do you understand that?

16             THE DEFENDANT:  I understand.

17             THE COURT:  And it's important that you

18   understand that if you decline to waive your right to

19   indictment and require the government to go to a grand

20   jury, the government will present evidence to the grand

21   jury and the grand jury might indict you, then again it

22   might not indict you.  Do you understand?

23             THE DEFENDANT:  Yes.

24             THE COURT:  But if you waive indictment, they'll

25   never have that choice and the cases definitely will

1    proceed because it will be proceeding on the charge

2    written up by the prosecutor.  Do you understand that?

3              THE DEFENDANT:  I understand.

4              THE COURT:  Have you had a chance to review the

5    document called an information that has the proposed

6    charges against you?

7              THE DEFENDANT:  I have.

8              THE COURT:  And have you reviewed that with Mr.

9    Gleason?

10             THE DEFENDANT:  I have.

11             THE COURT:  Do you understand what it is the

12   government wishes to charge you with doing?

13             THE DEFENDANT:  Yes, I do.

14             THE COURT:  All right.  Just to be sure, I'm

15   going to ask Mr. Murphy to summarize in general terms each

16   of the counts of the proposed information.

17             MR. MURPHY:  Your Honor, the proposed

18   information contains five counts.  First two counts are

19   counts of wire fraud in violation of Title 18 United

20   States Code Section 1343.

21             Count Three is a charge of securities fraud in

22   violation of Title 15, Section 78j(b) and 78ff.

23             Count Four charges the defendant with investment

24   adviser fraud in violation of Title 15 United States Code

25   Section 80b-6 and 80b-17.

1          And Count Five charges the defendant with

2     conspiracy to obstruct the SEC -- I'm sorry -- conspiracy

3     to obstruct justice, to obstruct an SEC official

4     proceeding and to defraud the SEC in violation of Title 18

5     United States Code Section 371.

6          THE COURT:  Thank you.  Mr. Illarramendi, do you

7     understand each of the charges that the government wishes

8     to bring against you?

9          THE DEFENDANT:  I do.

10          THE COURT:  All right.  And I apologize if I

11     asked you this already -- have you reviewed the proposed

12     information with Mr. Gleason?

13          THE DEFENDANT:  I have, yes.

14          THE COURT:  Have you discussed with him the

15     question whether or not to waive your right to indictment?

16          THE DEFENDANT:  I have.

17          THE COURT:  All right.  Mr. Gleason, do you know

18     of any reason under the circumstances of this case why

19     Mr. Illarramendi should not waive indictment?

20          MR. GLEASON:  No, Your Honor.

21          THE COURT:  All right.  And, Mr. Illarramendi,

22     has anybody made any threats or promises to induce you to

23     waive your right to indictment?

24          THE DEFENDANT:  No.

25          THE COURT:  All right.  Is there a written

```
 1   waiver?

 2              MR. MURPHY:  Yes, Your Honor.  Defense counsel

 3   has it.

 4              THE COURT:  All right.  Has that been fully

 5   executed?

 6              MR. GLEASON:  Yes, Your Honor.

 7              THE COURT:  Would you hand that up, please?

 8              MR. GLEASON:  May I approach?

 9              (Hands Court.)

10              THE COURT:  All right.  On the basis of the

11   written waiver of indictment as well as the statements

12   made by Mr. Illarramendi under oath in court today, it is

13   the finding of the court the waiver of indictment is a

14   knowing and voluntary waiver and it is accepted.  The

15   written waiver of indictment will be filed with the court.

16              And, Mr. Murphy, if the government has the

17   original information, this would be a good time to file

18   it.

19              MR. MURPHY:  Your Honor, I'll hand that up now.

20              THE COURT:  Thank you.

21              (Pause)

22              THE COURT:  Mr. Illarramendi, the next thing I

23   want to do is ask Mr. Murphy to review for us the

24   sentence, potential sentence or penalty that you face in

25   the event that you plead guilty to one or more of the
```

1    counts in the information, so please listen carefully.

2         MR. MURPHY:  Your Honor, the applicable

3    penalties with respect to each of Counts One and Two, the

4    wire fraud charges, each count carries a maximum prison

5    sentence of 20 years; a maximum period of supervised

6    release of three years; a fine of the greatest of

7    250,000-dollars or twice the gross gain or twice the gross

8    loss; as well as $100 special assessment.

9         Count Three, the securities fraud charge,

10   carries a maximum prison term of 20 years with a potential

11   three year supervised release period; and a fine that is

12   the greatest of 5 million-dollars or twice the gross gain

13   or twice the gross loss, as well as a special assessment

14   of $100.

15        Count Four, the investment adviser fraud count,

16   carries a prison term, a maximum prison term of five

17   years; with a supervised release period of three years

18   maximum; and a fine of the greatest of 10,000-dollars or

19   twice the gross gain or twice the gross loss; as well as a

20   $100 special assessment.

21        Finally, Count Five, a conspiracy count, carries

22   a five year maximum prison term; three year maximum

23   supervised release; a fine, the greatest of

24   250,000-dollars or twice the gross gain or twice the gross

25   loss; as well as a $100 special assessment.

```
 1              For a total maximum consecutive potential
 2    sentence of 70 years in prison.
 3              A plea to these offenses also will result in
 4    mandatory restitution, Your Honor.
 5              THE COURT:  And would there also be forfeiture?
 6              MR. MURPHY:  Yes, Your Honor.  A conviction on
 7    the wire, either or both of the wire fraud counts will
 8    result in forfeiture of any property that is, as set forth
 9    in the plea agreement, traceable to the offense.
10              THE COURT:  And all periods of supervised
11    release would be concurrent but any violation of
12    supervised release conditions would subject Mr.
13    Illarramendi up to two years in prison for that violation
14    without credit for time served or time spent on supervised
15    release, is that correct?
16              MR. MURPHY:  That is correct, Your Honor.
17              THE COURT:  All right.  Mr. Illarramendi, do you
18    understand the penalties or sentence that you face if you
19    plead guilty to one or more of the counts in the
20    information today?
21              THE DEFENDANT:  I do.
22              THE COURT:  All right.  And just to be clear,
23    what is the maximum overall term of imprisonment that you
24    face if you plead guilty?
25              THE DEFENDANT:  I understand it's 70 years.
```

1          THE COURT:  Yes.  And do you understand that the

2     fines that were described are potentially cumulative so

3     the fine amounts are somewhere well in excess of

4     5 million-dollars?

5          THE DEFENDANT:  I understand.

6          THE COURT:  And do you understand what's meant

7     by restitution and forfeiture?

8          THE DEFENDANT:  Yes.

9          THE COURT:  All right.  So restitution is a

10    court order that operates much as a civil judgment that

11    requires you to pay money to identifiable victims of these

12    offenses.  Do you understand?

13         THE DEFENDANT:  Correct.

14         THE COURT:  And forfeiture is the court ordered

15    transfer, if you will, of ownership of property derived as

16    a result of criminal wrongdoing.  So that if a forfeiture

17    order enters, property that you may think of as yours

18    would be ordered in effect to be the property of the

19    government.  Do you understand?

20         THE DEFENDANT:  Yes.

21         THE COURT:  Do you have any questions at all

22    about the potential penalties that you face if you plead

23    guilty to one or more of these counts today?

24         THE DEFENDANT:  Not at this time, no.

25         THE COURT:  I want to turn now to various rights

1    that you would be giving up if you decide to plead guilty

2    to one or more of these charges.

3            And I want make sure that you understand at the

4    beginning the very fundamental point that even if you

5    committed one or more of these offenses, you are not

6    required to plead guilty.  Even if you are actually

7    guilty, you still have the right to plead not guilty and,

8    by pleading not guilty, you place on the government the

9    burden of taking this case to trial and the burden of

10   proving to an unanimous jury of 12 persons that you've

11   been proven guilty beyond a reasonable doubt.

12           THE DEFENDANT:  I understand.

13           THE COURT:  All right.  So, even if you

14   committed this offense, you're allowed to plead not guilty

15   and the way you do that is simply by saying not guilty

16   when you're asked how it is you plead.

17           If you plead not guilty, you're entitled to a

18   speedy public trial before a jury with the assistance of a

19   lawyer in defending against the charges in the

20   information.

21           At trial you would be presumed innocent and the

22   government would have to overcome that presumption using

23   competent evidence and would be required to prove your

24   guilt to a unanimous jury and to a standard of beyond a

25   reasonable doubt.  You would not have the obligation to

1   prove that you're innocent.

2          If the government were to fail to prove your

3   guilt beyond a reasonable doubt, the jury would have a

4   legal duty to find you not guilty.

5          During the course of a trial, witnesses for the

6   government would be required to come here into court and

7   to testify under oath and in your presence.  And through

8   your lawyer, you would have the right to confront them,

9   which means that you could ask them questions either to

10  show they are not telling the truth or to bring out

11  information that might be helpful to your defense.

12         You would have the right to object to evidence

13  offered by the government and you would have the right to

14  offer evidence, including the testimony of witnesses, in

15  your defense.

16         At trial you would have the right to testify if

17  you wanted to, but you could not be required to testify.

18  Just as you have the right to remain silent today, you

19  would have the right to remain silent throughout your

20  trial.  What's more, if you exercise that right, I would

21  instruct the jury that they could not consider as any

22  evidence of your guilt the fact that you decided not to

23  testify at trial.  In other words, the jury would not be

24  permitted to assume that you were guilty or infer that

25  you're guilty because you decided not to testify at trial.

1          Whether or not you yourself testified, you'd

2     have the right to call others as witnesses and you would

3     have the ability to compel the attendance and testimony of

4     reluctant witnesses by serving them with what's called a

5     subpoena.  And a subpoena, quite simply, is a form of

6     court order that requires someone to come to court and to

7     give testimony.  So if there's someone who knows something

8     helpful to your defense but they don't want to become

9     involved or come to court, you may be able to compel them

10    to come to court and testify by serving them with a

11    subpoena.

12          Do you understand all the rights that I've just

13    described?

14          THE DEFENDANT:  I do.

15          THE COURT:  Do you understand these are rights

16    that come along with a trial which is what follows a not

17    guilty plea?

18          THE DEFENDANT:  I do.

19          THE COURT:  And do you understand that all of

20    these rights, including your right to trial, are rights

21    that you would waive if you plead guilty today?

22          THE DEFENDANT:  I do.

23          THE COURT:  And do you wish to waive all of

24    these rights?

25          THE DEFENDANT:  Yes, at this time yes.

1          THE COURT:  If you wish to plead guilty, I'm

2     going to ask you questions about what you did because I

3     cannot accept a guilty plea unless I'm satisfied that you

4     are in fact guilty.  So, in order to plead guilty today,

5     you're going to have to admit your guilt here in court.

6          And if you plead guilty and I accept your plea,

7     you're going to be giving up your constitutional right to

8     a trial and all the other rights that I just described.

9     If you plead guilty, there will be no trial of any kind

10    and there will be no jury that decides any issue in your

11    case.  So a jury will not decide whether or not you've

12    been proven guilty and a jury will not decide any issue of

13    fact that might affect the length of your sentence or the

14    other consequences of your guilt.  Do you understand?

15          THE DEFENDANT:  Yes.

16          THE COURT:  Just to be sure, if there are

17    disputed issues in your case, for example, what is the

18    amount of the loss, what is the amount payable as

19    restitution, so forth, those types of factual issues are

20    issues that I, as the sentencing judge, will decide at the

21    time of your sentencing, and it's easier for the

22    government to prove a fact to me than to prove that same

23    fact to a jury for three reasons.

24          First, there's only one of me and there's 12

25    jurors.  It's easier to convince one person than 12

1    people.

2              Second, the rules of evidence do not apply when

3    a judge conducts a sentencing hearing, so I can hear

4    information, testimony, see documents that a jury might

5    not be permitted to see.

6              And, most importantly, the standard of proof

7    which is the burden the government has is much lower

8    before a judge at sentencing than it is to a jury.  A jury

9    decides issues in a criminal case by a standard of beyond

10   a reasonable doubt, whereas, judges at sentencing decide

11   issues by what we call the preponderance of the evidence.

12   Preponderance of the evidence means in a very close

13   matter, I can still make a finding of fact, whereas a jury

14   would not be permitted to because if the issue is close,

15   it hasn't been proven beyond a reasonable doubt.

16             Do you understand that if you plead guilty

17   today, any issues of fact that need to be resolved at your

18   sentencing are issues that I will decide?

19             THE DEFENDANT:  Yes, I do.

20             THE COURT:  Without regard to the rules of

21   evidence and by a preponderance of the evidence standard?

22             THE DEFENDANT:  Yes, I do.

23             THE COURT:  All right.  I also want to make sure

24   you understand if you plead guilty today, that's going to

25   end the question of your guilt or innocence, so that if

1    you receive a sentence that you're not happy with, you're

2    not going to be able to come back into court for that

3    reason and withdraw your guilty plea and ask for a trial.

4    Do you understand?

5              THE DEFENDANT:  Yes, I do.

6              THE COURT:  What's more, a guilty plea will

7    deprive you of the right to appeal the fact of your guilt;

8    in other words, appeal your conviction.  You would retain

9    the right to appeal your sentence, which is the punishment

10   imposed as a result of that guilty plea.  Do you

11   understand that distinction?

12             THE DEFENDANT:  Yes, I do.

13             THE COURT:  And there are certain significant

14   consequences from pleading guilty and I want to review

15   those with you now.

16             First off, a guilty plea to a felony deprives

17   the person convicted of that felony of various civil

18   rights, including the right to vote, the right to serve on

19   a jury, the right to hold public office, and the right to

20   possess any type of firearm or ammunition.  Do you

21   understand?

22             THE DEFENDANT:  Is there a limited period or is

23   that permanent, for life?

24             THE COURT:  Depending upon the right, it would

25   be -- and depending upon the jurisdiction, it would be --

my understanding is it would be limited for some of those.

For example, I believe your right to vote in certain

places can be restored.  Your right to possess a firearm,

I believe, would be a lifetime ban.

THE DEFENDANT:  Understood.

THE COURT:  So, if anybody has any other

information, let me know, but that's my general

understanding certain states allow you to get your voting

rights back but others don't.

The next consequence is that every person

convicted of a felony in federal court is required to

provide a DNA sample that would be analyzed and used by

law enforcement for law enforcement purposes.  Do you

understand that?

THE DEFENDANT:  I do.

THE COURT:  And, finally, a guilty plea could

work to your disadvantage if you are ever in court again,

either on a civil or a criminal matter, especially if you

want to take the witness stand.  If you plead guilty to a

felony, you're going to be a convicted felon and that

conviction can be used to impeach your credibility if you

ever take the witness stand either in a criminal or a

civil proceeding.  The mere fact of the felony conviction

can be used to suggest that you're not telling the truth

in court.  Do you understand?

1          THE DEFENDANT:  Yes –– one minute, please.

2          (Defendant conferring with counsel.)

3          THE DEFENDANT:  Yes, I do.

4          THE COURT:  All right.  What's more, a guilty

5     plea today could work to your disadvantage if you are ever

6     convicted of another crime in the future, either because a

7     statute requires a longer term of imprisonment as a result

8     of a prior conviction or because a judge exercising

9     discretion decides to impose a longer term as a result of

10    the prior conviction.  Do you understand that?

11         THE DEFENDANT:  I understand.

12         THE COURT:  Do you understand each of these

13    additional consequences of pleading guilty?

14         THE DEFENDANT:  Yes, I do.

15         THE COURT:  And are you willing to accept them?

16         THE DEFENDANT:  Yes, I am.

17         THE COURT:  I need to describe for you how

18    sentencing works in the federal court.  And, again, I'm

19    going to start with the fundamental proposition, unlike

20    some other court systems including frequently the State of

21    Connecticut court system, there is no deal or agreement

22    about what sentence you'll receive in exchange for a

23    guilty plea today.  Do you understand?

24         THE DEFENDANT:  Yes.

25         THE COURT:  All right.  All we know is the

1    maximum that you face.  And the reason that there's no

2    deal or agreement is because, as a sentencing judge, I'm

3    required to consider quite a number of factors before

4    sentencing you.  They are all set forth a statute called

5    18 USC Section 3553(a).

6            They include your background and

7    characteristics, the nature and circumstances of these

8    crimes, the various purposes of sentencing which include

9    punishment for wrongdoing, deterrence of you and others,

10   rehabilitation, incapacitation, the sentencing guidelines

11   and the advice they give me about how to sentence you, the

12   need for restitution, and so forth.

13           In short, the statute requires I consider all

14   the information I have about you, good and bad, weigh it

15   and try to come up with a sentence that's fair, just and

16   reasonable in your individual case and that is sufficient

17   but not greater than necessary to serve the purposes of

18   sentencing.  Do you understand?

19           THE DEFENDANT:  Yes.

20           THE COURT:  Now, one of the things that I'm

21   required to consider at sentencing and, therefore,

22   required to review with you today is what we call the

23   U. S. Sentencing Guidelines.  Are you generally familiar

24   with the U. S. Sentencing Guidelines?

25           THE DEFENDANT:  I have reviewed them briefly,

1    yes.

2              THE COURT:  All right.  In essence, the

3    sentencing guidelines are a sentencing code, if you will,

4    that requires judges to perform two calculations and then

5    to receive advice about how to sentence someone based upon

6    the outcome of those calculations.

7              The first calculation is what we call your

8    offense level and it seeks to quantify the seriousness of

9    your criminal conduct.  In this case it could be affected

10   by various factual findings that I make, including the

11   amount of the loss and so forth.  Generally the more

12   serious the crime, the higher your offense level.  All

13   right?

14             The other calculation that I have to make is

15   what's called your criminal history score.  And I look to

16   see whether you've ever been convicted of another crime in

17   the past.  If so, did you spend time in prison.  How long.

18   When did you get out and so forth.  Based upon those types

19   of determinations, I calculate what's called a criminal

20   history score.

21             And then there's a chart in the guidelines and I

22   look down the offense level and across the criminal

23   history score and I see a range of numbers.  That range of

24   numbers represents the months of imprisonment that the

25   sentencing guidelines recommend that I sentence you to.

1    Do you understand?

2              THE DEFENDANT:  Yes.

3              THE COURT:  That range can be affected in a

4    variety of ways.  Most commonly, if it conflicts with the

5    statutory maximum then the statutory maximum becomes the

6    guideline sentence, but the guideline range can be

7    affected either upward or downward for extraordinary

8    circumstances, what we call a departure.

9              THE DEFENDANT:  Okay.

10             THE COURT:  Wherever that range ends up after

11   all those calculations, it's important for you to

12   understand that range is advisory only.  I have to

13   calculate it, I have to consider it, I do not have to

14   follow it.  Instead, applying all the statutory factors, I

15   need to come up with a sentence, as I said, that fits your

16   crime and fits you as an individual.  All right?  Do you

17   understand?

18             THE DEFENDANT:  Yes.

19             THE COURT:  All right.  Have you discussed with

20   Mr. Gleason sentencing in general in the federal court and

21   the sentencing guidelines in particular?

22             THE DEFENDANT:  Yes, I have.

23             THE COURT:  Has he given you some advice or

24   prediction about how you're likely to be sentenced in this

25   case?

```
 1              THE DEFENDANT:  We've discussed possibilities.

 2              THE COURT:  Very good.  And you understand that

 3    whatever he's told you is not binding on the court but,

 4    rather, simply his best advice about likely outcomes?

 5              THE DEFENDANT:  I do.

 6              THE COURT:  Mr. Gleason, have you had those

 7    discussions with Mr. Illarramendi?

 8              MR. GLEASON:  I have, Your Honor.

 9              THE COURT:  And do you -- are you confident he

10    understands that there's no deal or agreement governing

11    his sentence in this case?

12              MR. GLEASON:  That is correct, Your Honor.

13              THE COURT:  All right.  I understand there is a

14    written plea agreement.  Has that been fully executed?

15              MR. GLEASON:  Yes, Your Honor.

16              THE COURT:  All right.  Would you hand it up,

17    please?

18              MR. GLEASON:  Just a minute.  Sure.

19              (Pause - Defendant and Counsel signing)

20              MR. GLEASON:  May I approach the clerk, Your

21    Honor?

22              THE COURT:  Please.

23              (Hands Court.)

24              THE COURT:  Actually there's one other place

25    this needs to be signed, the stipulation of offense
```

1     conduct.

2                (Pause)

3                MR. GLEASON:  All right, Your Honor.

4                (Hands Court)

5                THE COURT:  All right.  Mr. Illarramendi, I've

6     just been handed a 14 page document.  It takes the form of

7     a letter dated March 7, 2011, addressed to Mr. Gleason,

8     your lawyer, and from both Mr. Schechter and Mr. Murphy

9     who are both prosecutors here in the District of

10    Connecticut.  And both you and Mr. Gleason have signed it

11    on page 11 which is the last page of the letter.

12                You've also signed the second page of an

13    attachment entitled Stipulation of Offense Conduct.  And

14    then the last page is an attachment called Rider Regarding

15    Restitution.

16                Did you have a chance to read this entire

17    document before you signed it?

18                THE DEFENDANT:  Yes, I did.

19                THE COURT:  Did you have a chance to discuss it

20    with Mr. Gleason before you signed it?

21                THE DEFENDANT:  Yes, I did.

22                THE COURT:  Do you understand what it says?

23                THE DEFENDANT:  Yes, I do.

24                THE COURT:  Just to be sure, I'm going to ask

25    Mr. Murphy to summarize the principal provisions of the

```
1    plea agreement.  If he says anything that either surprises
2    you or that is different from what you think this document
3    says, I need you to tell me that.  Okay?
4              THE DEFENDANT:  Yes, sir.
5              MR. MURPHY:  Your Honor, would you like me to
6    skip over the elements for the time being?
7              THE COURT:  Actually I've changed somewhat the
8    way I do things.  I think it makes sense both for
9    Mr. Illarramendi to understand what the elements are as
10   well as what we mean by elements while you do that.  So
11   let me first make sure he understands what is meant by
12   elements of the offense.
13             As you see, there is at the beginning of this
14   plea agreement, really in the first three pages, set forth
15   for each of the various counts, what we call elements of
16   the offense.  And what we mean by elements of an offense
17   are the essence of the offense.  It's those things that
18   the prosecutor would have to prove to a jury beyond a
19   reasonable doubt before that jury could find you guilty of
20   that particular offense.
21             Do you understand what we mean by elements of
22   the offense?
23             THE DEFENDANT:  I do.
24             THE COURT:  All right.  And I'm not going to go
25   through each of them but I will ask Mr. Murphy to do that
```

1    as he goes through the plea agreement.

2         MR. MURPHY:  Your Honor, the plea agreement

3    which I've signed in my own name as well as signed for

4    Mr. Schechter, the plea agreement sets forth that the

5    defendant will be pleading guilty to the five charges I

6    mentioned earlier.

7         It has set forth in it the elements of each of

8    the offenses which I'll go through now.

9         The elements for wire fraud, which are Counts

10   One and Two, are that there was a scheme or artifice to

11   defraud or obtain money or property by means of materially

12   false and fraudulent pretenses, representations or

13   promises; that the defendant knowingly and willfully

14   participated in the scheme or artifice to defraud with

15   knowledge of it's fraudulent nature and with an intent to

16   defraud; and, three, that in execution of or in

17   furtherance of the scheme, the defendant used or caused

18   use of wires in interstate or foreign commerce.

19        With respect to the securities fraud count,

20   Count Three, the essential elements of that are that in

21   connection with the purchase or sale of securities, the

22   defendant either employed a device, scheme or artifice to

23   defraud or made an untrue statement of material fact or

24   omitted to state a material fact which made what was said

25   under the circumstances misleading, or engaged in an act,

1    practice or course of business that operated or would

2    operate as a fraud or deceit upon a purchaser or seller.

3         Two, that the defendant acted willfully,

4    knowingly and with an intent to defraud.

5         And, three, that the defendant knowingly used or

6    caused to be used any means or instruments of

7    transportation or communication in interstate commerce or

8    the use of the mails in furtherance of fraudulent conduct.

9         With respect to Count Four, the investment

10   adviser fraud count, the elements of that offense are four

11   in number.

12        First, that the defendant was acting in an

13   investment adviser with respect to clients or potential

14   clients.

15        Second, that the defendant either employed a

16   device, scheme or artifice to defraud clients or

17   prospective clients, or engaged in a transaction, practice

18   or course of business which operated as fraud or deceit

19   upon a client or prospective client, or engage in, act,

20   practice or course of business which was fraudulent,

21   deceptive or manipulative.

22        Third, that the defendant acted willfully and

23   knowingly, with intent to defraud.

24        And, fourth, that the defendant used the mails

25   or other instrumentality of interstate commerce.

1          With respect to the conspiracy count in Count

2    Five, the elements of that are three in number.

3          First, that two or more persons entered into an

4    agreement to commit an offense against the United States.

5          Second, that the defendant knowingly

6    participated in the conspiracy with the specific intent to

7    commit at least one of the offenses that were the objects

8    of the conspiracy.

9          And, three, that during the course of the

10   conspiracy, one or more members of the conspiracy

11   committed an overt act in furtherance of the objectives of

12   the conspiracy.

13         Those are the elements of the offenses, Your

14   Honor.  The plea agreement then goes into the penalties

15   which were already addressed.

16         The plea agreement also notes that restitution

17   is mandatory, as Your Honor has already gone through.

18         Page five of the plea agreement notes that the

19   defendant's conviction upon Counts One or Two, the wire

20   fraud counts, will result in forfeiture, forfeiture of

21   property as set forth in the plea agreement.

22         The plea agreement also notes the applicability

23   of the sentencing guidelines, which Your Honor's addressed

24   with the defendant.  It notes that the court is required

25   to consider those guidelines but is not bound by them, and

1    is not bound by any stipulations as to the plea agreement.

2         And it notes that the defendant has no right to

3    withdraw his guilty plea if the sentence or the guideline

4    application is other than he had anticipated.

5         The plea agreement also notes that the

6    government will recommend that the guideline offense level

7    be reduced by a total of three levels and that

8    recommendation would be conditioned upon his full,

9    complete and truthful disclosure of relevant information

10   to the Probation Office and providing a full and truthful

11   financial statement to Probation.

12        The agreement notes that the court is not

13   obligated to accept the government's recommendation on

14   acceptance of responsibility.  It also notes that the

15   government will not make the recommendation if the

16   defendant has either not terminated his criminal conduct

17   or has engaged in conduct that would be obstruction of

18   justice, or if he violates any of his conditions of

19   release.

20        Moreover, the government will not make the

21   recommendation if he seeks to withdraw his guilty plea or

22   engages in conduct that is otherwise inconsistent with the

23   affirmative acceptance of responsibility.

24        And the agreement notes that the defendant will

25   not be allowed to withdraw his guilty plea if the

government does not make the recommendation for one of the

reasons listed in the agreement.

The agreement also notes that there's an

attached stipulation of offense conduct.  It notes that

the stipulation of offense conduct does not include all

the relevant conduct and the stipulation is not binding.

It further notes that the defendant's attempt to

withdraw from any of the representations in the

stipulation of offense conduct will be a material breach

of the plea agreement and will allow the government to

void the agreement as such.

The plea agreement contains a section labeled

Guideline Stipulation.  I would note, Your Honor, that the

parties have not stipulated to an offense level.  The

guidelines -- the principal reason for that is the loss

issue is undetermined at this point, Your Honor, although

I would note that it could be extremely high given the

potential losses here in the hundreds of millions of

dollars.

There is -- the defendant understands that the

guideline range will be determined by the court and he

will not be allowed to withdraw his guilty plea if the

court imposes a sentence outside the sentencing guideline

range or the fine range.

It further notes that the defendant reserves his

1    right to seek downward departures for various reasons, as

2    well as a nonguideline sentence, and the government

3    testimony reserves its right to object to any such

4    motions.

5            The parties have also reserved their rights to

6    appeal the defendant's sentence in this case.

7            There's a section on information in the court,

8    noting that the government reserves its right to address

9    the court with respect to an appropriate sentence in this

10   matter.

11           Page eight includes waiver of rights that the

12   court has gone through with the defendant, including the

13   right to indictment and the various trial rights he would

14   be giving up by entering a guilty plea.

15           There's also a waiver of the statute of

16   limitations should the defendant at some point in the

17   future succeed in withdrawing his guilty plea.

18           On page nine there is a section on the

19   defendant's acknowledgement of guilt and voluntariness of

20   his plea in which he acknowledges that he's entering his

21   guilty plea today freely and voluntarily, without any

22   reliance upon discussions with the government other than

23   those that are in writing, without promise of benefit of

24   any kind other than those that are in writing with the

25   government and without threat of force or intimidation.

1          He also agrees that he is not a prevailing

2    party within the terms of the Hyde Amendment.

3          The agreement notes that it is limited to the

4    parties to the agreement and the government makes no

5    representations about any civil or administrative

6    consequences that might result from the defendant's guilty

7    plea.

8          The agreement notes the collateral consequences

9    that the court has already gone through with the

10   defendant.

11         And the plea agreement also contains a

12   satisfaction of criminal liability section, Your Honor,

13   which I note has a typographical error in it.  It says the

14   defendant's guilty plea will satisfy his criminal

15   liability in the District of Connecticut as well as his

16   participation in the wire fraud and securities fraud,

17   scheme to defraud clients of his investment advisory

18   business between -- it should be 2006 and 2011.  As

19   written, it says 2008.  And it also includes his

20   obstruction of the SEC.

21         It further notes the limitations on this

22   satisfaction of liability.

23         Finally, the agreement notes that if the

24   defendant violates any term or condition of the agreement,

25   or engages in any criminal activity or fails to appear for

sentencing, the government may void the agreement but he would not be allowed to withdraw his guilty plea.

And, finally, it notes that other than as written down, there are no other agreements with the government.

It's signed by the parties and there is a two page stipulation of offense conduct attached to it as well as a rider concerning restitution.

THE COURT:  All right.  In terms of the typographical error, I don't think it's necessary to physically note it on the plea agreement unless either of you would like that done.

MR. MURPHY:  No, Your Honor.

MR. GLEASON:  No, Your Honor.

THE COURT:  We have a statement on the record and I think that that is consistent with the stipulation of offense conduct, so I think that should be sufficient.

All right.  Mr. Gleason, anything to add to that summary?

MR. GLEASON:  No, sir.

THE COURT:  All right.  Mr. Illarramendi, was there anything Mr. Murphy said when he was describing the plea agreement that either surprised you or was different from what you think the document says?

THE DEFENDANT:  No, Your Honor.

1          THE COURT:  All right.  I'm going to go over a

2     couple things just to make sure you understand them fully.

3          First, with respect to the elements for each of

4     the five counts, Mr. Murphy set them out.  Do you have any

5     questions, concerns, issues whatsoever with what the

6     government would have to prove with respect to each of the

7     counts of the information?

8          THE DEFENDANT:  No, Your Honor.

9          THE COURT:  On page six, as Mr. Murphy noted, if

10    if you seek to withdraw from any of the admissions set

11    forth in the stipulation of offense conduct, the

12    government will deem that a breach.  In other words, the

13    attached pages that are entitled the Stipulation of

14    Offense Conduct contain various factual statements about

15    what it is that you did.

16         First off, let me inquire whether you agree that

17    the statements set forth in the stipulation of offense

18    conduct are true and accurate.

19         THE DEFENDANT:  Yes.

20         THE COURT:  All right.  And the government's

21    relying upon your acknowledgement that they are true and

22    accurate, and should you later argue that they are not

23    true and accurate or should you indicate that you no

24    longer stand by the statements in the stipulation of

25    offense conduct, then that would be cause for the

```
 1    government to void the plea agreement.  And, as a
 2    practical matter, what that means is they could prosecute
 3    you more fully, which would otherwise be prohibited by the
 4    section of this agreement that is entitled Satisfaction of
 5    Federal Criminal Liability.  Do you understand?
 6              THE DEFENDANT:  I understand, yes.
 7              THE COURT:  All right.  Has your entire
 8    agreement with the government been put down in writing
 9    here?
10              THE DEFENDANT:  Yes.
11              THE COURT:  All right.  So has anybody made a
12    promise to you orally that has not been included in your
13    written agreement?
14              THE DEFENDANT:  No, they have not.
15              THE COURT:  Has anybody sought to coerce you,
16    intimidate you, force you in any way into signing the plea
17    agreement with the government?
18              THE DEFENDANT:  No.
19              THE COURT:  Has anybody tried to force you,
20    coerce you into pleading guilty today?
21              THE DEFENDANT:  No.
22              THE COURT:  Whose decision is it to pled guilty
23    today?
24              THE DEFENDANT:  Mine.
25              THE COURT:  And have you decided to plead guilty
```

1    because you, in fact, committed each of the five offenses

2    set forth in the information?

3            THE DEFENDANT:  Yes.

4            THE COURT:  It's my practice to return the

5    original plea agreement and the attachments thereto, that

6    is, the Stipulation of Offense Conduct and Rider

7    Concerning Restitution to the U. S. Attorney for

8    safekeeping and later filing at or about the time of

9    sentencing.  Is there any objection to doing so in this

10   case?

11           MR. GLEASON:  No, sir.

12           THE COURT:  Very good.  Let the record reflect

13   I'm returning to Mr. Murphy the original Plea Agreement,

14   Stipulation of Offense Conduct and Rider Concerning

15   Restitution.

16           (Hands Counsel)

17           THE COURT:  Mr. Illarramendi, we reviewed, when

18   reviewing your plea agreement, the various elements of

19   each of these five charges, and I'm going turn to

20   Mr. Murphy at this point and ask him to describe how the

21   government believes it could prove beyond a reasonable

22   doubt that you committed each of these offenses.  In

23   short, what he's going to do is describe what the

24   government believes you did that was illegal.

25           If he says anything with which you disagree, I

1    need you to tell me that, so please listen carefully to

2    his summary of the government's proof.

3          MR. MURPHY:  Your Honor, if the defendant were

4    to proceed to trial, the government would prove that from

5    in or about 2006 until about February 8, 2007, he engaged

6    in a scheme to defraud the investors and creditors of

7    hedge funds and entities he advised and he also engaged in

8    a scheme to defraud the SEC.

9          One of the objects of the scheme was to obtain

10   money and property from investors and creditors without

11   disclosing the truth about the performance of the funds

12   and the assets under management of the funds.  Another

13   object of the scheme was to conceal from the investors and

14   creditors the hole that existed between the fund assets

15   and liabilities, which has been estimated at exposing

16   investors to potential losses in the hundreds of millions

17   of dollars.

18         Throughout the scheme to defraud, the defendant,

19   among other things, used money provided by new investors

20   to the Funds to pay out the returns to earlier investors;

21   created fraudulent documents to mislead and deceive his

22   investors, creditors and the SEC about the existence of

23   the Funds' assets; made false representations to his

24   investors and creditors in an effort to obtain new

25   investments from them and to prevent them from seeking to

1    liquidate their investments; and comingled the investments
2    in each individual hedge fund with investments in the
3    other hedge funds without regard to their structure,
4    stated purpose or investment limitations, and thus,
5    treated all investments in the Funds as a single source to
6    provide returns to the investors.
7          By way of example, in 2010, the defendant used
8    approximately $53 million from two funds he managed and
9    controlled, by transferring the money to entities
10   affiliated with the Michael Kenwood Group, an entity he
11   also controlled, without disclosing the use of this money
12   to all of the investors.  Thereafter, in an effort to
13   generate a sufficient return to fill the hole in the
14   Funds' assets, the defendant used the approximately
15   $53 million to invest in private equity companies.  The
16   investments were made in the name of entities affiliated
17   with the MK Group, and not in the name of the Funds.
18         In 2010 and the early part of 2011, the scheme
19   to defraud involved creating documents falsely attesting
20   to the fact that one of the funds had approximately
21   $275 million in assets.  These bogus documents included an
22   asset verification letter prepared by an accountant
23   purporting to attest to the existence of these fictitious
24   assets.  The evidence would show the letter furthered the
25   scheme by seeking to prevent and forestall the discovery

1   of the hole in the Funds' assets.

2         With respect to the Counts One and Two, Your

3   Honor, the government would prove that each of the two

4   wires set forth in those counts furthered the fraudulent

5   scheme and that each of the wires involved material

6   misrepresentations.

7         As for the securities fraud charge, Your Honor,

8   the United States would prove the existence of the fraud

9   scheme as described above.  It would also prove the fraud

10  scheme was done willfully and knowingly and was in

11  connection with the purchase and sale of securities and it

12  would prove that the defendant accomplished the fraudulent

13  scheme through the use of means of communication in

14  interstate commerce and the use of the mails.

15        As for the investment adviser fraud charge, the

16  U. S. would prove the defendant acted as an investment

17  adviser and in that capacity he willfully and knowingly

18  perpetrated the scheme to defraud clients as described in

19  the information, and that he did so through the use of

20  mails and other instrumentalities in interstate commerce.

21        Finally, if the conspiracy charge were to

22  proceed to trial, the U. S. would prove that the defendant

23  and others had an agreement to create the fictitious

24  assets as noted above, as reflected in the Fictitious

25  Asset Verification Letter which is charged in the

Information.  The United States would prove that this letter was false and that it was created for the purpose of misleading anyone who questioned the assets of the defendant's Funds, specifically the Short Term Liquidity Fund.  The letter falsely represented that the Short Term Liquidity Fund had outstanding credits worth at least $275 million through loans that it had purportedly made to approximately 15 Venezuelan companies.

The U. S. would prove the following manner and means of the conspiracy and overt acts in furtherance of the conspiracy:

A.  That the Short Term Liquidity Fund at no time lent $275 million to Venezuelan companies.

B.  That the Short Term Liquidity Fund did not have loan agreements with these Venezuelan companies.

C.  That the representation in the letter about those loans was completely false.

D.  That the defendant agreed with others to fraudulently prepare the letter and create false documents to substantiate the false letter.

E.  That the defendant caused a $1 million payment to be made to a coconspirator to further the conspiracy.

F.  That the defendant -- that knowing that the letter was false, the defendant caused it to be presented

1  to the United States Securities and Exchange Commission

2  during an enforcement directed review.

3          G.  That after the SEC filed a civil lawsuit

4  against the defendant and others in this district, the

5  defendant caused this letter to be presented to court

6  appointed business advisors.

7          And H.  That one of the defendant's

8  coconspirators made false statements to the SEC about the

9  existence of the loans, when they knew that no such loans

10  existed.

11          In short, Your Honor, the government would

12  establish all the elements of each of the offenses charged

13  in the information beyond a reasonable doubt.

14          THE COURT:  Thank you.

15          Mr. Illarramendi, was there anything Mr. Murphy

16  said when he was describing your conduct that you think is

17  inaccurate?

18          THE DEFENDANT:  No.

19          THE COURT:  So you agree with everything that he

20  says that you did?

21          THE DEFENDANT:  Yes.

22          THE COURT:  And you've already indicated that

23  the stipulation of offense conduct is accurate?

24          THE DEFENDANT:  Yes.

25          THE COURT:  Mr. Murphy, any further inquiry

1     needed?

2          MR. MURPHY:  No, Your Honor.

3          THE COURT:  Mr. Illarramendi, it is now time to

4     take your plea.  We can read the information out loud to

5     you or you can waive that reading if you would prefer.

6          THE DEFENDANT:  I waive the reading, Your Honor.

7          THE COURT:  Thank you.  I would ask that the

8     courtroom deputy, please, to put Mr. Illarramendi to plea.

9          THE CLERK:  Yes, Your Honor.

10          In the case of the United States v. Francisco

11     Illarramendi, Criminal Number 3:11CR-41, as to Counts One

12     and Two of the information charging you with a violation

13     of Title 18, United States Code, Section 1343, what is

14     your plea?

15          THE DEFENDANT:  Guilty.

16          THE CLERK:  And as to Count Three of the

17     information charging you with a violation of Title 15,

18     United States Code, Sections 78j(b) and 78ff, and Title

19     17, Code of Federal Regulation Section 240.10b-5, what is

20     your plea?

21          THE DEFENDANT:  Guilty.

22          THE CLERK:  And as to Count Four of the

23     Information charging you with a violation of Title 15,

24     United States Code, Sections 80b-6 and 80b-17, what is

25     your plea?

1          THE DEFENDANT:  Guilty.

2          THE CLERK:  And as to Count Five of the

3   Information charging you with a violation of Title 18,

4   United States Code, Section 371, what is your plea?

5          THE DEFENDANT:  Guilty.

6          THE CLERK:  Your Honor, the defendant pleads

7   guilty to Counts One, Two, Three, Four and Five of the

8   Information.

9          THE COURT:  Thank you.  On the basis of the

10   written plea agreement, as well as the statements made by

11   Mr. Illarramendi under oath in open court today, it is the

12   finding of the court in the case of United States v.

13   Francisco Illarramendi that Mr. Illarramendi is fully

14   competent and capable of entering informed pleas, that

15   he's aware of the nature of the charges and consequences

16   of the pleas, and that the pleas of guilty are knowing and

17   voluntary pleas supported by an independent basis in fact

18   satisfying each of the essential elements of these

19   offenses.

20          The pleas to Counts One, Two, Three, Four and

21   Five of the Information are therefore accepted and

22   Mr. Illarramendi is now adjudged guilty of those offenses.

23   Findings of guilty shall enter and this case is referred

24   to the U. S. Probation Office for a presentence

25   investigation.

1          Mr. Illarramendi, January Satrazemis from the U.

2    S. Probation Office is with us in court today and either

3    she or someone else from that office will be interviewing

4    you and most likely your family and friends in the near

5    future.  The purpose of those interviews is to put

6    together for me a comprehensive report called a

7    Presentence Report or a PSR, which is the single most

8    important document I'm going to rely on at the time of

9    your sentencing.

10          It's going to tell me about you, your

11    background, the nature and circumstances of these

12    offenses, and any other information that might be helpful

13    in deciding how to sentence you, so it's generally in your

14    interest if you and your family and friends provide the

15    requested information to the probation officer.  I do need

16    to advise you whatever you tell the probation officer

17    could be used against you at sentencing.  Do you

18    understand?

19              THE DEFENDANT:  Yes, Your Honor.

20              THE COURT:  All right.  And because your

21    interview with the probation officer is such an important

22    proceeding in your case, you have the right to have

23    Mr. Gleason present during that interview.  Do you

24    understand?

25              THE DEFENDANT:  Yes.

 1            THE COURT:  And you can turn to him for advice

 2     before answering any questions.  All right?

 3            Is there an application for release pending

 4     sentencing?  Did you wish to make an application for

 5     release?

 6            MR. GLEASON:  Yes, Your Honor.  I would ask that

 7     the court under the totality of the circumstances which

 8     include that Mr. Illarramendi promptly disclosed the

 9     offense to the government, without prompting and without

10     any investigation other than that the SEC did provide the

11     government with a copy of the SEC complaint, which

12     incidentally does not -- that is to say the SEC does not

13     contain the same allegations as the criminal information

14     here, and under those circumstances, Your Honor, it is

15     unlikely that the government would have learned of the

16     events had not Mr. Illarramendi made full and complete

17     disclosure.

18            In addition, Your Honor, this is the first

19     offense to which Mr. Illarramendi has pleaded guilty or

20     even been charged.  He has absolutely no prior record of

21     any kind.  And I would suggest that given his age, given

22     his educational and background and the nature of the

23     offense, that this qualifies as an aberrant episode in his

24     life, not to be repeated.

25            He's the father of two small children, ages four

1    and six, who live here in Connecticut in New Canaan.  He's

2    resided in Connecticut for quite sometime.  That's where

3    the two companies were, in Stamford.  His mother and

4    father reside in the United States, Your Honor, in

5    Bethesda, Maryland.

6            And I think that under the totality of the

7    circumstances, Your Honor, Mr. Illarramendi -- who also

8    consents to, if the court deems it appropriate, electronic

9    monitoring, limitations on his movement not to leave the

10   state, surrender of his passport, that sort of thing, Your

11   Honor, he's perfectly willing to do that.  But as I said,

12   I think under the totality of the circumstances the court

13   should consider releasing Mr. Illarramendi to his own

14   recognizance without any cash bail.  Thank you, Your

15   Honor.

16           THE COURT:  Mr. Murphy?

17           MR. MURPHY:  Yes, Your Honor.  As an initial

18   matter, I would say we agree that the defendant can be

19   released.  I make that agreement without necessarily

20   associating myself with all of defense counsel's remarks,

21   in particular about necessarily all the details of the

22   investigation, but we can get into that at a later date.

23           I do think Mr. Illarramendi is an appropriate

24   candidate for release, although I don't think release on

25   his own recognizance, necessarily just letting him go free

1    without any conditions, is appropriate.

2              I would suggest electronic monitoring,

3    supervision by probation, some sort of a curfew that

4    requires Mr. Illarramendi to be home at certain hours of

5    the day, and that his travel be restricted to Connecticut

6    and, to the extent he needs to go to New York to visit his

7    attorney, and I would be satisfied if he gave prior

8    notification to probation in advance of travel to go New

9    York.  And the government has Mr. Illarramendi's passports

10   and so we would ask that we hold onto those for several

11   reasons.

12             And, finally, Mr. Illarramendi has ownership

13   interest in I believe four parcels of real estate, a New

14   Canaan home, a New York City apartment and I believe two

15   other condominiums.  We would request that -- there is

16   some complications given the SEC lawsuit and I think some

17   freezes that are in order, Your Honor, but we had

18   discussed with counsel posting those as part of the bond

19   package subject to counsel being able to work out the

20   appropriate paperwork with the SEC and receiver to the

21   extent possible, and we could certainly foresee a

22   reasonable period of time for posting those, 30 days or

23   more, if necessary.

24             MR. GLEASON:  That is correct, Your Honor.  Mr.

25   Illarramendi promises to pledge his ownership interest in

```
1    those properties to the extent discussed by Mr. Murphy.

2              THE COURT:  Okay.  That's helpful.  Thank you.

3              (Pause)

4              THE COURT:  Is it sufficient for the

5    government's concerns to indicate that he would agree to

6    forfeit, upon failure to appear as required, property that

7    he owns in New Canaan and New York City?  I didn't

8    completely follow the remainder of it.

9              MR. MURPHY:  I think that would be sufficient

10   for the government's purposes, Your Honor.  He has two

11   properties in, I believe -- in Bethesda, Maryland, Your

12   Honor, and we, you know, to the extent those can be

13   pledged as well, we would ask that.  If they can't be,

14   we're satisfied with the New York and New Canaan

15   properties.

16             THE COURT:  I'm just going to describe it

17   generally as real property in New Canaan and New York City

18   and Bethesda, Maryland.  Is that satisfactory to

19   everybody?

20             MR. MURPHY:  Yes.

21             MR. GLEASON:  (Nodding in the affirmative.)

22             THE DEFENDANT:  (Nodding in the affirmative)

23             THE COURT:  Mr. Murphy, you mentioned -- did you

24   mention a curfew?  Seems to me if we have home detention

25   monitored electronically, a curfew becomes somewhat
```

1    superfluous.

2            MR. MURPHY:  Leave that to your discretion, Your

3    Honor.

4            THE COURT:  Yes, let's just do that.

5            (Pause)

6            THE COURT:  All right.  Mr. Illarramendi, what

7    I've done here is begun filling out an order setting

8    conditions of your release.  And let me start by making

9    sure you understand that these are restrictions on your

10   activities between now and the time of your sentencing.

11   They are intend to be somewhat restrictive frankly and if

12   you violate any of these terms or conditions -- well, let

13   me just say it would be quite ill-advised for you to

14   violate these conditions.  Not only will it subject you to

15   severe penalties, including incarceration, but the fact

16   that you show yourself unable to comply with an order of

17   the court is not something that will be looked upon

18   favorably at the time of your sentencing.

19           THE DEFENDANT:  Understood.

20           THE COURT:  It would not be wise for you to

21   violate any of these terms and conditions, so it's

22   important that you understand what they are.

23           And the conditions that I'm going to order are

24   as follows:

25           First, that you report to the U. S. Probation

1    Office as required.

2           Second, that you execute an agreement to

3    forfeit, upon failing to appear as required, designated

4    properties specifically real property in New Canaan, New

5    York City and Bethesda, Maryland.

6           That you surrender your passport either to your

7    attorney or to AUSA Murphy and that you obtain no new

8    passport.

9           That you restrict your travel to the State of

10   Connecticut and, upon prior notice to the U. S. Probation

11   Office and the U. S. Attorney, to New York for the purpose

12   of meeting with your counsel.

13          That you refrain from possessing a firearm,

14   destructive device or other dangerous weapon or

15   ammunition.

16          Do you own a firearm or ammunition?

17          THE DEFENDANT:  No, I don't.

18          THE COURT:  Okay.  That you refrain from

19   excessive use of alcohol and from unlawful use of

20   narcotics or controlled substances.

21          And that you participate in a home confinement

22   program monitored electronically and that you pay all or a

23   part of the program based upon your ability to pay as

24   determined by the probation officer.

25          And that the program is going to be a program of

1    home detention in which you're restricted to your

2    residence at all times except for employment, education,

3    religious services, medicals, substance abuse or mental

4    health treatment, attorney visits, court appearances,

5    court ordered obligations or other activities as

6    pre-approved by the Pretrial Services Office that is

7    supervising you, which would be the U. S. Probation Office

8    for the District of Connecticut.

9           The last page of this document is advice

10   concerning penalties and sanctions.  In effect, it sets

11   forth what can happen to you if you violate any of these

12   terms or conditions.

13          What I'd like you to do is take this document,

14   review it with your lawyer, and to the left of each of the

15   boxes that I've checked, initial in the margin.  That's

16   going to indicate to me that you've read and understand

17   those conditions, and then you need to sign it on the last

18   page.  It acknowledges that you have read and understand

19   the penalties that you face should you violate any terms

20   or conditions.

21          (Pause)

22          MR. MURPHY:  Your Honor, may we approach for

23   just a moment?

24          (Off the record discussion.)

25          MR. GLEASON:  May I approach the Clerk, Your

1    Honor?

2              THE COURT:  Please.

3              (Hands Court.)

4              THE COURT:  All right.  Counsel at sidebar asked

5    whether we could modify the condition to allow meetings

6    with receiver or receiver's counsel in New York without

7    advance permission and that change has been made.

8              Mr. Illarramendi, I made that after you signed

9    it.  You understand that's also --

10             THE DEFENDANT:  I understand that.

11             THE COURT:  -- part of this?  Very good.

12             All right.  Do you have any questions at all

13   about any of the restrictions that you're subject to?

14             THE DEFENDANT:  No.  Thank you.

15             THE COURT:  All right.  And I'm going to order

16   then that you be released after processing subject to

17   these conditions and subject to the execution of the

18   appropriate agreement to forfeit the real property that

19   was mentioned earlier.

20             Are there other matters to take up today?

21             MR. MURPHY:  Your Honor, I would just want to

22   put on the record that prior to this, Mr. Schechter and I

23   made several calls to try to contact some of the known

24   victims we were advised by the receiver in the SEC action.

25   And we called, were able to speak with two lawyers who

```
1    represent some of the potential victims.  We left a

2    message for another lawyer just to call us back.  I didn't

3    hear back.  I don't know if Mr. Schechter did but he's

4    unfortunately out of town so -- and I would anticipate

5    that as the receiver does their job, they are going, we're

6    going to be identifying additional victims and our office

7    will, once that happens, endeavor to make those

8    notifications per the statute.

9              THE COURT:  Very good, thank you.  And in light

10   of the uncertanties that surround the calculation of the

11   loss and identification of the victims, my suggestion

12   would be to delay scheduling sentencing in this matter

13   until the AUSA indicates that there's sufficient

14   information to make a reasonable finding regarding the

15   amount of the loss.  Is there any objection doing that in

16   this case?

17              MR. MURPHY:  No objection from the government.

18              MR. GLEASON:  No objection, Your Honor.

19              THE COURT:  All right, very well.  So,

20   Mr. Murphy, I'll wait to hear from you on that.  Anything

21   further we should take up today?

22              MR. MURPHY:  Not at this time, Your Honor.

23              MR. GLEASON:  No, sir.  Thank you, Your Honor.

24              THE COURT:  Thank you.  We'll stand in recess.

25
```

1    (Whereupon the above matter was adjourned at 1:12

2    o'clock, p. m.)

C E R T I F I C A T E


       I, Susan E. Catucci, RMR, Official Court
Reporter for the United States District Court for the
District of Connecticut, do hereby certify that the
foregoing pages are a true and accurate transcription of
my shorthand notes taken in the aforementioned matter to
the best of my skill and ability.



/S/ Susan E. Catucci
_____

Susan E. Catucci, RMR
Official Court Reporter
915 Lafayette Boulevard
Bridgeport, Connecticut  06604
Tel: (917) 703-0761