UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | No. 3:11-cr-41 (SRU) |
| FRANCISCO ILLARRAMENDI | |

## RESTITUTION ORDER

On March 7, 2011, Francisco Illarramendi waived indictment and pleaded guilty to an Information charging him with two counts of wire fraud, in violation of 18 U.S.C. § 1343; securities fraud, in violation of 15 U.S.C. §§ 78j(b) and 78ff, and 17 C.F.R. § 240.10b-5; investment adviser fraud, in violation of 15 U.S.C. §§ 80b-6 and 80b-17; and conspiracy to obstruct justice, obstruct an official proceeding, and defraud the U.S. Securities and Exchange Commission ("SEC"), in violation of 18 U.S.C. §§ 371, 1503, and 1512.

The United States ("the government") provided notice of its intent to move for restitution in accordance with the recommendation of the court-appointed receiver (the "Receiver") in the related SEC case against Illarramendi on January 16, 2015. (doc. 171) It made a supplemental request for restitution on June 10, 2015 (doc. 176).

On August 25, 2015, Illarramendi moved for release pending his appeal, (docs. 191, 197), which motion the government correctly re-characterized as a motion for bail pending appeal (doc. 194).

For the reasons set forth below, and based upon the entire record before me, I **grant** the government's request for restitution (doc. 176) in the amount of **$370,482,716.54**, to be distributed pro rata in the amounts and to the victims identified by the Receiver, as specified in the government's exhibit (186-1), which is incorporated here by reference as Exhibit A. I also

**grant** the government's request that Illarramendi be required to refund the amount of **$59,051.81** to the CJA fund. I **deny** Illarramendi's motion for bail pending his appeal. (doc. 194).

## I.      Standard of Review

The Mandatory Victim Restitution Act of 1996 ("MVRA"), codified at 18 U.S.C. § 3663A, requires that a district court order restitution to victims of certain crimes.[1] The MVRA defines a victim as "a person directly and proximately harmed as a result of the commission of" an offense set forth in the MVRA, "including, in the case of an offense that involves as an element a scheme . . . any person directly harmed by the defendant's criminal conduct in the course of the scheme." 18 U.S.C. § 3663A(a)(2).  The MVRA identifies several crimes for which restitution may be ordered, and its provisions "shall apply in all sentencing proceedings for convictions of, or plea agreements relating to charges for" any offense that is "an offense against property . . . including any offense committed by fraud or deceit." 18 U.S.C. § 3663(c)(1)(A)(ii).  For cases in which the original property cannot be returned to the owner or her designee, and there has been damage, loss, or destruction of property as a result of a defendant's criminal conduct, that defendant may be ordered to pay an amount equal to the greater of the value of the property on the date of the damage, loss or destruction, or the value of the property on the date of sentencing, less the value of any part of the property that is returned, as of the date it is returned.  18 U.S.C. § 3663(b)(1).  "When restitution is mandatory, the amount of restitution can only be challenged on the ground that it does not reflect the losses to victims." *Harris*, 302 F.3d at 75 (citing 18 U.S.C. § 3664(f)(1)(A)).

---

1.   Those offenses include a crime of violence, as defined in 18 U.S.C. § 16; any offense against property or under the Controlled Substances Act, 21 U.S.C. § 856(a), including crimes committed by fraud or deceit; any offense related to tampering with consumer products, in violation of 18 U.S.C. § 1365; any crime involving the theft of medical products, in violation of 18 U.S.C. § 670; and in which an "identifiable victim or victims has suffered a physical injury or pecuniary loss." 18 U.S.C. § 3663A(c)(1).

When determining value for the purpose of restitution, "a district court must consider that the purpose of restitution is essentially compensatory," *United States v. Boccagna*, 450 F.3d 107, 115 (2d Cir. 2006), and accordingly, a district court must "order restitution to each victim in the full amount of each victim's losses . . . without consideration of the economic circumstances of the defendant."  18 U.S.C. § 3664(f)(1)(A); *see also United States v. Walker*, 353 F.3d 130, 131, 133 (2d Cir. 2003) (noting that a district court has no discretion to award restitution in an amount different than the loss to the victims); *United States v. Catoggio*, 326 F.3d 323, 329 (2d Cir. 2003) (restitution must be set in the full amount of the victim's losses); *United States v. Harris*, 302 F.3d 72, 75 (2d Cir. 2002) (restitution must be set without consideration of the defendant's economic circumstances).  The government bears the burden of demonstrating, by a preponderance of the evidence, the amount of loss sustained by a victim as a result of the offense.  18 U.S.C. § 3664(e).  Those losses do not require "mathematical precision," but instead may be based on "a reasonable approximation of losses supported by sound methodology." *United States v. Gushlak*, 728 F.3d 184, 196 (2d Cir. 2013).  The final restitution figure "must correspond to all actual losses," and a "reasonable estimate" suffices in circumstances where it may be impossible to determine a precise amount.  *Catoggio*, 326 F.3d at 329.

**II.   Background**

From about 2006 through 2011, Illarramendi engaged in a large-scale Ponzi scheme to defraud investors, creditors, and the SEC. The facts regarding the substantive offense are set out in the Information (doc. 3), to which Illarramendi pleaded guilty on March 7, 2011, (doc. 5). At that time, Illarramendi was released on bail. (doc. 6) As part of his plea agreement with the government, Illarramendi consented to making restitution by cooperating with the Receiver appointed in *Securities and Exchange Commission v. Illarramendi*, No. 3:11c-cv-78 (JBA) ("the

3

SEC action"), and Illarramendi also acknowledged that the government had reserved its right to seek restitution consistent with the provisions set forth in 18 U.S.C. § 3663A.  Plea Agreement 4; Rider Concerning Restitution (doc. 10).

On August 3, 2012, the government moved to revoke Illarramendi's bail on the grounds that he had received and spent a $600,000 state tax refund while on bail without notifying the court. (doc. 48) Although I warned Illarramendi that his conduct was inappropriate, I denied the government's motion on August 10, 2012. (doc. 57). On January 18, 2013, however, in light of numerous violations, I terminated Illarramendi's release and ordered him to surrender himself by January 25, 2013. (doc. 99)

On September 16, 2014, the Receiver in the SEC action submitted a distribution plan. 3:11-cv-78 (JBA) (doc. 905-1) After a hearing and significant briefing, Judge Arterton approved the plan on October 27, 2014. (doc. 941)

On January 29, 2015, I sentenced Illarramendi to 156 months' imprisonment, three years' supervised release, and a $500 special assessment (docs. 163, 183).  *See also* Judgment (doc. 169).  At sentencing, Illarramendi objected to imposing restitution. I held a separate hearing on the issue of restitution on June 15, 2015 (doc. 180) and accepted supplemental briefing from both parties before the restitution hearing (docs. 171, 176, 177). At that hearing, I also ordered Illarramendi to reimburse the CJA fund for his improper use of that resource, given his ability to pay for counsel. (doc. 180). I also accepted further supplemental briefing from both the government and Illarramendi regarding restitution after the hearing. (docs. 186, 188, 190, 192, 193).

**III. Discussion**

    A.  <u>Government's Motion for Restitution (doc. 176)</u>

Under the MVRA, 18 U.S.C. §§ 3663A and 3664, I am required to impose an order of restitution in favor of the victims of Illarramendi's criminal conduct for the full amount of their losses, without consideration of Illarramendi's ability to pay. *Id.* § 3664(f)(1)(A). I am also required to set a schedule for payment of restitution, and in doing so, must consider the following statutory factors: the financial resources and other assets of the defendant; the projected earnings and income of the defendant; and any financial obligations of the defendant. 18 U.S.C. § 3664(f)(2).

        *i.*    *Restitution Amount*

In this case, the government argues that a restitution order in the amount of $370,482,717 is an appropriate measure of the losses Illarramendi caused to his victims. In support of that argument, it has submitted extensive documentation from the court-appointed Receiver in the SEC action (docs. 176-1, 177-1, 186-1, 188-1).

The government concedes that the Receiver's plan is only a "reasonable approximation" of the victims' losses because a precise dollar amount cannot be calculated due to the scale of the losses. Gov't Reply Br. at 4 (doc. 192). Nevertheless, it correctly argues that the Receiver is in an excellent position to evaluate the loss to Illarramendi's victims, and has now spent considerable time and resources to do so. *Id.* at 4–5; *see also Gushlak*, 728 F. 3d at 196 ("[T]he MVRA requires only a reasonable approximation of losses supported by a sound methodology.").

Illarramendi asserts that the government has not provided sufficient evidence to support its position on restitution, and that he needs more time and access to documents in order to correct

perceived errors in the Receiver's accounting. But, as the government points out, Illarramendi had nearly four years between his guilty plea and his sentencing to prepare, and has also had nearly another year after the sentencing to collect additional evidence on the issue of restitution. Despite filing a prolix opposition brief, Illarramendi has failed to identify any material error in the Receiver's plan, or any new evidence that would call the plan into question.

I find that the Receiver's methodology, which primarily relies on the sworn claims submitted through the claims administration process, is a fair and reasonable way to determine the victims' losses. Accordingly, I adopt the government's exhibit (186-1) in full, both as to the identity of Illarramendi's victims and the amount of their losses, and I grant the government's request for restitution in the amount of $370,482,716.54 (doc. 176). Illarramendi shall receive credit against his restitution obligation for the value of any distributions made by the Receiver between the date of the government's submission on June 25, 2015 and the date of this Order.

A schedule of restitution is discussed below, in combination with the schedule for Illarramendi's payments to the CJA Fund.

B. Government's Motion for Payments to the CJA Fund (doc. 176)

The Criminal Justice Act (the "CJA"), 18 U.S.C § 3006A, provides that each United States district court shall establish a plan for furnishing representation to persons financially unable to obtain counsel in a criminal proceeding. *Id.* § 3006A(a). It further provides, however, that "[w]henever . . . the court finds that funds are available for payment from or on behalf of a person furnished representation, it may authorize or direct that such funds be paid to the appointed attorney, to the bar association or legal aid agency or community defender organization which provided the appointed attorney . . . or to the court for deposit in the

Treasury as reimbursement to the appropriation . . . ." *Id.* § 3006A(f); *see also United States v. Konrad*, 730 F. 3d 343, 350–51 (3d Cir. 2013) ("When a defendant is able to pay for the costs of a private attorney, he is not entitled to gratuitous or subsidized legal counsel under the CJA."); *United States v. Wilson*, 597 F. 3d 353, 357 (6th Cir. 2010) ("What the Act gives with one hand to a criminal defendant 'financially unable' to pay for legal services it takes away with the other if the defendant turns out to be 'financially able' to obtain counsel."); *United States v. Coniam*, 574 F. Supp. 615, 618 (D. Conn. 1983).

Illarramendi initially claimed that he was unable to afford counsel, and an attorney was appointed for him and paid for by the CLJ Fund administered by the District of Connecticut. Over the course of these proceedings, Illarramendi's counsel and paralegal received a total of $59,091.81 from the CJA Fund for their work. It has become abundantly clear, however, that Illarramendi could easily have afforded to pay that sum out of his significant available funds, including a $600,000 tax refund that he received and spent while refusing to pay for counsel.

Accordingly, Illarramendi is ordered to pay back the entire cost of his legal representation, $59,091.81, to the CJA Fund.

### C. Schedule for Restitution and CJA Fund Payments

I have considered all of the evidence regarding Illarramendi's financial circumstances and ability to pay, including the presentence reports and Illarramendi's briefing.

Illarramendi is currently serving a thirteen-year prison sentence and has been prohibited from working in the securities industry. Although he gained significant income through his illegal Ponzi scheme, his assets have now been frozen and/or clawed back for distribution through the Receiver. Illarramendi also has two young children.

Given those limitations on Illarramendi's ability to pay, I determine that a schedule of periodic payments is appropriate for both his CJA Fund and restitution obligations. Accordingly, to the extent he has not already done so, Illarramendi is ordered to relinquish any and all profits he made from his illegal scheme, which the Receiver estimates to be about $25,844,834 in total. (doc. 177)  Beginning immediately upon entry of this Order, he shall also pay 20% of his gross personal income on a monthly basis to the Clerk of Court until the amount he owes is satisfied.

Payment may be made in the form of cash, check or money order. All payments by check or money order shall be made payable to the "Clerk, United States District Court," and each check shall be delivered to the United States District Court, Attention: Clerk's Office, 915 Lafayette Boulevard, Bridgeport, CT 06604, as required by 18 U.S.C. § 3611. Illarramendi shall write the docket number of this case on each check delivered to the Clerk's Office. Any cash payments shall be hand delivered to the Clerk's Office using exact change, and shall not be mailed.

The Clerk shall first apply Illarramendi's payments to the CJA Fund, and once that debt is repaid, shall forward the payments to the Receiver for pro rata distribution to the victims identified in the government's exhibit, doc. 186-1, incorporated by reference as Exhibit A of this Order, in accordance with the District's Standing Order on the Disbursement of Restitution Payments by the Clerk of Court.

      i.   *Additional Collection Provisions*

Illarramendi shall notify the Court, the United States Probation Office (during any period of probation or supervised release), and the United States Attorney's Office, of any material

change in his economic circumstances that might affect his ability to pay restitution in accordance with 18 U.S.C. § 3664(k).

Illarramendi shall notify the Court, the United States Probation Office (during any period of probation or supervised release), and the United States Attorney's Office, of any change in address.

Nothing in this order shall prevent the Bureau of Prisons from implementing restitution payments in accordance with its Inmate Financial Responsibility Program ("IFRP"), 28 U.S.C. § 545.10 et seq. up to the maximum amount permitted under the IFRP guidelines.

Furthermore, nothing in this order shall prevent the victims or the United States from pursuing immediate collection through civil remedies allowed by law in accordance with 18 U.S.C. § 3664(m).

Illarramendi shall pay toward any restitution still owed the value of any substantial resources he receives from any source during the period of incarceration, including inheritance, settlement or other judgment in accordance with 18 U.S.C. § 3664(n).

The liability to refund the CJA Fund and /or to pay restitution shall terminate the later of 20 years from the entry of judgment or 20 years after Illarramendi's release from prison, or upon his death.

D.  <u>Illarramendi's Motion for Bail Pending Appeal (docs. 191, 197)</u>

Illarramendi moves for bail pending appeal, arguing that a release is necessary in order for him to receive effective legal assistance.

A motion for bail pending appeal is governed by 18 U.S.C. § 3143(b), which requires that:

> [A] person who has been found guilty of an offense and sentenced to a term of imprisonment, and who has filed an appeal . . . be detained, unless the judicial officer finds--
>> (A) by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c) of this title; and
>>
>> (B) that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in—
>>> (i)      reversal,
>>>
>>> (ii)     an order for a new trial,
>>>
>>> (iii)    a sentence that does not include a term of imprisonment, or
>>>
>>> (iv)    a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process.

Illarramendi has failed to make the required showing. First, he has failed to show by clear and convincing evidence that he is not a flight risk. In fact, his history suggests the opposite—when previously out on bail, Illarramendi violated the conditions of release in numerous ways, including by obtaining and spending a significant amount of money in violation of court orders. Those violations, and the support Illarramendi has received from friends during this prosecution, suggest that Illarramendi has the ability to gain access to resources needed to leave the country.

Illarramendi has also failed to show that a "substantial" question of law is raised in his appeal. The Second Circuit has not strictly adhered to the likely-reversal requirement in section 3143(b)(2), but has instead focused on whether the appeal raises a "substantial" question. *See United States v. Randell*, 761 F.2d 122, 125 (2d Cir. 1985).  A "substantial question is one of more substance than would be necessary to a finding that it was not frivolous. It is a close question or one that very well could be decided the other way." *Id.* (internal quotation marks omitted).

Illarramendi's briefing does not actually discuss the issues raised in his appeal, but instead argues that he requires release in order to work on his appeal. That justification bears no relationship to the requirements of section 3143(b).

Moreover, his appellate brief fails to raise a "substantial question" that would justify release. Illarramendi raises two questions on appeal—whether I properly calculated the amount of loss with respect to the Guidelines that applied to his sentence, and whether my denial of an evidentiary hearing on that issue constituted a violation of due process. *See* Appellee's Br., *United States v. Illarramendi*, No. 15-526, (2d Cir.).

Based on the evidence before me, I determined at Illarramendi's sentencing that the losses to his victims likely exceeded $200 million. But because of the difficulties of calculating the precise amount of loss at that time, I did not rely in any significant way on the amount of loss resulting from his offense. First, I based Illarramendi's Guideline determination on the much lower amount that Illarramendi had gained through the scheme, which at that time was estimated to be a comparatively small $20 million. Second, in addition to that already favorable reduction, I departed from the resulting Guidelines range when imposing Illarramendi's sentence. Thus, even assuming some procedural defect in the Guidelines determination, that defect would amount to harmless error because I did not meaningfully rely on the Guidelines calculations in setting the final sentence. *See United States v. Mandell*, 752 F.3d 544, 553 (2d Cir. 2014)*, cert. denied,* 135 S. Ct. 1402, 191 L. Ed. 2d 373 (2015) ("If we 'identify procedural error in a sentence, but the record indicates clearly that the district court would have imposed the same sentence in any event, the error may be deemed harmless, avoiding the need to vacate the sentence and to remand the case for resentencing.'") (quoting *United States v. Jass,* 569 F.3d 47, 68 (2d Cir. 2009)).

11

Accordingly, Illarramendi has failed to show any of the required elements for release on bail pending appeal, and his motion is denied.

## IV. Conclusion

The government's motion for restitution is **granted.** (doc. 176) Illarramendi is ordered to pay **$370,482,716.54** in restitution to the victims of his crimes. The government's motion for a refund of fees to the CJA Fund is **granted.** (doc. 176) Illarramendi is ordered to pay **$59,051.81** to the Clerk of Court to be deposited in the CJA Fund. Illarramendi must relinquish any amount of the profits he made from his scheme that he has not already turned over, and beginning immediately upon the entry of this Order he must pay 20% of his gross personal income on a monthly basis to the Clerk of Court first to be applied to the amount owed to the CJA Fund, and then to be provided to the Receiver for distribution until the restitution amount is satisfied.

Illarramendi's motion for bail pending appeal is **denied.** (docs. 191, 197)

It is so ordered.

Dated at Bridgeport, Connecticut, this 11th day of December 2015.

       /s/ STEFAN R. UNDERHILL
    Stefan R. Underhill
    United States District Judge